Lucille **HEAD** (88–5353); Helen Melton (88–5354), Plaintiffs–Appellants,

v.

**JELLICO HOUSING AUTHORITY**; Joe Brown; George Deuel; Bessie Dobson; Lawrence Dupee; Clyde Strunk; Wanda Lambdin, Members, Board of Commissioners of Jellico Housing Authority, Defendants–Appellees.

Nos. 88–5353, 88–5354.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1989.

Decided March 27, 1989.

Lenny L. Croce (argued), Rural Legal Services of Tennessee, Inc., Oak Ridge, Tenn., for Lucille Head & Helen Melton.

Wanda G. Sobieski (argued), Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, Tenn., for Jellico Housing Authority.

Before KRUPANSKY and WELLFORD, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

In case number 88–5353, Lucille Head appeals to this court from the district court's February 17, 1988 order granting defendants' motion for summary judgment and denying plaintiff's motions for partial summary judgment and to amend her complaint. In case number 88–5354, Helen Melton appeals from the district court's order, entered on the same date, denying her motion to intervene. These cases were consolidated for appeal before this court. For the following reasons, we affirm the district court's judgment.

I.

Appellant Lucille Head resided in Campbell County, Tennessee and rented housing from the Jellico Housing Authority (JHA) at all times pertinent to the instant litigation. On October 9, 1979, JHA and Head entered into a dwelling lease, which provid-

ed for monthly rental payments of sixty-nine dollars. Presumably, these rental payments were calculated in accordance with 42 U.S.C. § 1437a, which authorizes the Secretary of the Department of Housing and Urban Development (HUD) to set rental payments not to exceed a percentage of family income as defined by the Secretary.

The lease specified that the monthly rental payments would remain constant unless adjusted in accordance with section five of the lease or in accordance with rent schedules, requirements, or regulations established by HUD. Section five of the lease provided in relevant part as follows:

REDETERMINATION OF RENT, DWELLING SIZE AND ELIGIBILITY Once each year as requested by Management, Tenant agrees to furnish to Management a signed statement and certification containing accurate information as to family income, employment, and composition, for use by Management in determining whether the rental should be changed....

....

*Special Reexaminations*
If at the time of admission, any annual reexamination, or interim redetermination, Management is unable to arrive at a reasonable estimate of Tenants income [sic] for the following twelve months (after the Tenant has furnished the required statements and certification), a special reexamination shall be scheduled for a later date, and the Tenant will be placed upon a Temporary Rent based upon the best available data. Retroactive charges or credits shall be made if found to be necessary at the time of the scheduled Special Reexamination.

FULL INTERIM REDETERMINATION
A. During the period between admission and Annual Reexamination, Tenant will be on a FULL INTERIM REPORTING BASIS, this means that Tenant is REQUIRED to report ANY and ALL changes in *total family income and family composition* to the Project Office within ten (10) days after they occur.

B. Interim Changes in Rent/or Family Composition
(1) Increase in Rent—Increases in Rent are to be made effective the first of the month following that in which the change occurred.

....

D. If it is found that Tenant has misrepresented and/or failed to report facts upon which his/her rent is based, so that the rent he/she is paying is less than he/she should have been charged, then the increase in rent shall be made retroactive to the date that the increase would have taken effect.

E. In the event of any rent adjustment pursuant to the above, Management will mail or deliver a 'Notice of Rent Adjustment' to Tenant which shall accept [sic] as an amendment to this lease.

On February 23, 1984, Head applied for Social Security disability insurance benefits and supplemental security income. The Secretary of Health and Human Services denied both applications throughout the administrative process. On August 23, 1985, Head filed a complaint in the United States District Court for the Eastern District of Tennessee, requesting review of the Secretary's final decision pursuant to 42 U.S.C. § 405(g). The district court reversed the Secretary's final decision in an order dated January 28, 1986.

In addition to prospective benefits, on May 8, 1986, Head received a check in the amount of $2605.64, representing supplemental security income due from February 13, 1984 through May of 1986. On May 12, 1986, Head received a check in the amount of $5676.00, representing disability insurance benefits due from November of 1983 through February of 1986.

Head informed JHA of this income as her lease required. On May 14, 1986, JHA issued Head a notice of rent adjustment, which advised her that her lease was being amended to charge retroactive rent in the amount of $913.02 for "back rent off SSI." Head paid this amount without protest on May 15, 1986. On June 10, 1986, JHA issued a second notice of rent adjustment.

This notice advised her that her lease was being amended to charge additional retroactive rent in the amount of $1607.27, "for back rent on SS." This notice also advised Head that her new rent, effective July 1, 1986, would be $108.00 (compared to her current rent at that time of ninety-seven dollars). Head did not pay the $1607.27 requested. In a letter dated June 18, 1986, Head, through her counsel, protested the retroactive rent charges, requested a refund of the $913.02 already paid, and filed a grievance pursuant to section fourteen of the lease.[1]

On May 11, 1987, Head filed a complaint against JHA, its executive director Joe Brown, and its board of commissioners in the United States District Court for the Eastern District of Tennessee. The original complaint alleges denial of procedural due process, deprivation of property without due process, violations of federal regulations, and breach of contract. The complaint seeks a declaratory judgment concerning JHA's practice of assessing and collecting retroactive rent on the basis of a lump-sum Social Security payment, seeks to enjoin JHA's practice of assessing and collecting retroactive rent, and seeks a refund of retroactive rent paid and actual and punitive damages.

On October 27, 1987, appellees filed a motion for summary judgment.

On November 2, 1987, Helen Melton sought to intervene by filing a motion to intervene pursuant to Federal Rule of Civil Procedure 24 and to proceed in forma pauperis.

Also on November 2, 1987, Head filed a motion to amend her complaint pursuant to Federal Rule of Civil Procedure 15, and her proposed amended complaint. The proposed amended complaint contains an allegation of the denial of equal protection in addition to the allegations contained in the original complaint.

Head filed a motion for partial summary judgment and a declaration in support of her motion on November 16, 1987.

On February 19, 1988, the district court entered a memorandum opinion, denying Head's motion for partial summary judgment, granting appellees' motion for summary judgment, refusing to allow Head to amend her complaint, and refusing to allow Melton to intervene.

Both Head and Melton filed notices of appeal, and their appeals were consolidated for disposition by this court. Appellees filed a motion to dismiss Melton's appeal for lack of jurisdiction, but Judge Keith denied that motion in a marginal order dated November 11, 1988. We begin by deciding whether the district court erroneously granted summary judgment to appellees.

## II.

The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employs initially under Federal Rule of Civil Procedure 56(c). *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716 (1983). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez*, 826 F.2d at 1536.

## A.

■ Appellant Head's primary argument is that pursuant to federal regulations JHA

---

1. Section fourteen provided as follows: "All grievances or appeals arising under this lease shall be processed and resolved pursuant to the grievance procedure of Management which is in effect at the time such grievance or appeal arises, which procedure is posted in the Project Office and incorporated herein by reference."

cannot charge retroactive rent on the basis of Social Security benefits paid as the result of a federal court reversing a final administrative decision. Specifically, she argues that the federal regulations allow JHA to count only "anticipated income" for purposes of charging rent. She contends that the lump-sum payments at issue in the instant case were not anticipated. She argues that these payments are instead either lump-sum additions to family assets or temporary, nonrecurring or sporadic income. We reject this argument.

As we mentioned above, 42 U.S.C. § 1437a authorizes the Secretary of HUD to set rental payments not to exceed a percentage of family income as defined by the Secretary. 24 C.F.R. Part 913 "establishes definitions, policies and procedures related to income limits and the determination of eligibility, income and rent for applicants and tenants in Public Housing." 24 C.F.R. § 913.101. 24 C.F.R. § 913.106 provides in relevant part as follows:

(a) Annual income is the anticipated total income from all sources received by the Family head and spouse (even if temporarily absent) and by each additional member of the Family, including all net income derived from assets for the 12–month period following the effective date of the initial determination or reexamination of income, exclusive of certain types of income as provided in paragraph (c) of this section.

(b) Annual Income includes, but is not limited to:

. . . .

(4) The full amount of periodic payments received from social security, annuities, insurance policies, retirement funds, pensions, disability or death benefits and other similar types of periodic receipts, including a lump-sum payment for the delayed start of a periodic payment;

(5) Payments in lieu of earnings, such as unemployment and disability compensation, worker's compensation and severance pay (but see paragraph (c)(3) of this section);

. . . .

(c) Annual income does not include the following:

. . . .

(3) Lump-sum additions to Family assets, such as inheritances, insurance payments (including payments under health and accident insurance and worker's compensation), capital gains and settlement for personal or property losses (but see paragraph (b)(5) of this section);

. . . .

(9) Temporary, nonrecurring or sporadic income (including gifts)[.]

Although subsection (a) defines annual income as "anticipated total income," subsection (b)(4) expressly includes in annual income the full amount of periodic payments received from Social Security, including a lump-sum payment for the delayed start of a periodic payment. "[O]ne of the oldest and most respected rules of statutory construction teaches us that general terms should be construed in light of the specific examples that are expressly identified as included therein." *Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 327, 103 S.Ct. 634, 652, 74 L.Ed.2d 465 (1983) (Stevens, J., dissenting). *See Anderson v. Mills*, 664 F.2d 600, 604 (6th Cir.1981). Applying this rule of statutory construction to the instant case, requires the conclusion that the regulations permit the lump-sum payments at issue to be counted as annual income. We are especially confident of this conclusion since section 913.106(b)(4), which expressly includes lump-sum payments for the delayed start of Social Security benefits, was promulgated more recently than the more general subsection (a).

We are confident of our conclusion for yet another reason. 24 C.F.R. § 960.209(b), which is made applicable through 24 C.F.R. § 913.209, requires compliance with lease provisions regarding interim reporting of changes in income and contemplates corresponding adjustments in rent. This section would make no sense if annual income was given the narrow construction urged by Head.

### B.

■ Appellant Head also argues that the retroactive rent charges made in the instant case are unreasonable and in violation of 42 U.S.C. § 1437d(e)(*l*). We reject this argument.

42 U.S.C. § 1437d(e)(*l*) provides that a public housing agency must utilize leases which do not contain unreasonable terms and conditions. As mentioned above, section 960.209(b) specifies that tenants must comply with lease provisions requiring interim reporting of changes in income. This section further mandates "any [rent] adjustments determined to be appropriate." Apparently, this section authorizes retroactive rent adjustments which are determined to be appropriate.

The lease in the instant case provided generally that "[i]ncreases in rent are to be made effective the first of the month following that in which the *change occurred.*" (Emphasis added). Appellant's lease expressly authorized retroactive rent charges in two places. First, retroactive rent charges were mandated if found to be necessary at the time of a scheduled special reexamination. Second, retroactive rent charges were mandated if it was found that the tenant had misrepresented and/or failed to report facts upon which her rent was based, so that the rent she was paying was less than she would have been charged. Although retroactive rent is *mandated* only under these two circumstances, the general provision for rent increases likewise may be construed to *permit* retroactive rent charges in the event that income changes are retroactive, i.e., reflect accrued income. In such a case, the income change can easily be considered to have occurred at the beginning of the accrual period.

That is precisely what happened in the instant case, and it was entirely reasonable. As the district court noted:

> Making retroactive adjustments to rent for the period during which the lump sum periodic payments accrue is the most reasonable means of including the lump sum payments as income. The only other alternative would be to include the

entire amount of the lump sum payment as current income for the purposes of rent calculation. This would obviously greatly distort plaintiff's level of income and cause her rent to be disproportionate to her true level of income. It is undisputed that by making retroactive adjustments, plaintiff received the benefit of lower rental rates and was actually charged less than if the lump sum payments were included as current income at the time they were actually received.

### C.

■ Appellant Head next argues that she was denied her statutory and due process right to a hearing before an impartial party.

42 U.S.C. § 1437d(k) provides as follows:

The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (1) of this section;

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

An agency may exclude from its procedure any grievance concerning an eviction or termination of tenancy in any jurisdiction which requires that, prior to eviction, a tenant be given a hearing in court which the Secretary determines

provides the basic elements of due process.

The grievance procedures and requirements promulgated by the Secretary are contained in 24 C.F.R. § 966.55(e). The lease states that grievance procedures are posted in the Project Office and are incorporated as part of the lease. The notices of rent adjustment issued in the instant case indicated that the rent adjustments were "for back rent off SSI" and "for back rent on SS." Appellant did request and receive an informal hearing. One prerequisite for a formal hearing is an escrow deposit of the amount of rent at issue. 20 C.F.R. § 966.55(e). This deposit was not made in the instant case.

Appellant argues that section 966.55(e) is not implicated because she is contesting a rent redetermination, which is governed exclusively by section 24 C.F.R. § 966.4(c). We reject this argument. The fact that the situation involves a rent determination does not prevent 24 C.F.R. § 966.4(b), which is captioned, *"Payments due under the lease"* and defines the amount of rent at issue for the purpose of section 966.55(e), from applying.

Having held that the district court did not err in granting summary judgment in favor of appellees on Head's original complaint, we must decide whether the court abused its discretion in denying Head leave to amend her complaint.

### III.

Federal Rule of Civil Procedure 15(a) provides that generally after a responsive pleading has been served, as it had been in the instant case, "a party may amend the party's pleading only by leave of court; and leave shall be freely given when justice so requires."

[T]he decision as to when 'justice requires' an amendment is within the discretion of the trial judge, and we review the decision under an abuse of discretion standard. In addition, it is well settled law that the district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss. How-ever, when a district court bases its decision solely on a legal conclusion that the amended pleading would not withstand a motion to dismiss, this court must review the legal conclusion *de novo*. Whether an abuse of discretion occurred in such a case depends in whole upon the correctness of the district court's predicate legal conclusion.

*Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir.1986) (citations omitted).

Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973).

In the instant case, the district court denied Head's motion to amend her complaint in two sentences as follows: "Plaintiff seeks to amend her complaint to add a claim of denial of equal protection under Chapter 8 of HUD's regulations. Plaintiff concedes that a federal court should not decide federal constitutional questions where a dispositive non-constitutional ground is available. *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974)."

Appellant Head argues that the district court misconstrued the holding of *Hagans v. Lavine* and denied her motion to amend her complaint based on faulty legal analysis. Head's argument has some merit. In *Hagans,* 415 U.S. 543, 94 S.Ct. at 1382, the Supreme Court held that given a constitutional and a statutory claim, "[t]he latter was to be decided first and the former not reached if the statutory claim was dispositive." "Dispositive" in this context must

mean resolved in favor of the plaintiff. *See Id.* at 549–50, 94 S.Ct. at 1385–86. In the instant case, the statutory claim was not resolved in favor of plaintiff; therefore, it was not dispositive. For this reason, *Hagans* does not support the district court's failure to allow amendment of the complaint.

Appellees argue, on the other hand, that this case falls within the rule that the district court may deny a motion to amend a complaint if the court concludes that the pleading as amended could not withstand a motion to dismiss. We agree.

The proposed amended complaint added the following alleged equal protection violation:

> By assessing and collecting retroactive rent on the basis of a Social Security 'lump-sum payment for the delayed start of a periodic payment' from tenants of housing units owned by the JHA, but not from tenants of privately owned housing units subsidized under Section 8 administered by the JHA and from tenants receiving one-time, lump-sums other than Social Security disability benefits, Lucille Head has been denied equal protection of laws guaranteed by the fifth and fourteenth amendments to the United States Constitution[.]

Defendants' response to plaintiff's first set of requests for admissions, interrogatories and requests for production of documents for inspection and copying, states that "[JHA] would state that to its knowledge, no Section 8 Moderate Rehabilitation tenant has received lump-sum Social Security benefits representing retroactive payment for delayed start of periodic payments." This statement is uncontradicted. Therefore, as a matter of law, there exists no factual predicate for an equal protection violation, and the district court properly could not have granted appellant's motion to amend her complaint.

For this reason, we affirm the district court's judgment on this issue.

## IV.

■ Finally, we consider whether the district court abused its discretion in denying appellant Melton's motion to intervene.

Federal Rule of Civil Procedure 24(b) provides as follows:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In *Bradley v. Milliken,* 828 F.2d 1186, 1193–94 (6th Cir.1987) (citations omitted), this court held:

> Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the 'applicant's claim or defense and the main action have a question of law or fact in common.' Fed.R.Civ.P. 24(b)(2). Rule 24(b)(2) also provides that '[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' We therefore review a denial of a Rule 24(b) motion only for an abuse of discretion.

The Fifth Circuit has noted that a charge of abuse of discretion in the denial of a motion for permissive intervention appears to be almost untenable on its face when an appellant has other adequate means of asserting her rights. *Korioth v. Brisco,* 523 F.2d 1271, 1279 n. 25 (5th Cir.1975). *Cf., Illinois v. Bristol–Myers, Co.,* 470 F.2d 1276, 1279 (D.C.Cir.1972) (per curiam) (when the appellant has adequate remedy in a nationwide wholesaler-retailer class action certified by the district court it was no abuse of discretion to deny permissive intervention under Rule 24(b)).

In the instant case, appellant Melton filed a separate complaint in the United States District Court for the Eastern District of Tennessee on July 19, 1988. This complaint is substantially similar to her proposed intervenor complaint. Since appellant has availed herself of other ade-

quate means of asserting her rights, we affirm the district court's judgment on this issue.

## V.

For all of the foregoing reasons, we AFFIRM the district court's judgment.