Ricardo J. ANDRADE, Plaintiff,

v.

CRAWFORD & COMPANY, Defendant.

No. 1:91CV1902.

United States District Court,
N.D. Ohio, E.D.

March 10, 1992.

Harold L. Williams, Cleveland Legal Aid Soc., Cleveland, Ohio, for plaintiff.

Carolyn K. Seymour, Marc J. Bloch, Duvin, Cahn & Barnard, Cleveland, Ohio, for defendant.

MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Ricardo Andrade brings this action under Title VII of the Civil Rights Act against Crawford & Company for race and sex discrimination in employment. Andrade alleges that he was effectively forced to leave his job as a casualty adjuster because he was subjected to harsher working conditions than similarly situated white and female employees. Relying on the Civil Rights Act of 1991, Andrade has moved to amend his complaint to assert a claim under 42 U.S.C. § 1981. This motion was initially granted by this Court, and Crawford has moved for reconsideration. For the reasons stated, Crawford's motion for reconsideration is denied.

I.

Ricardo Andrade was employed by Crawford & Company from October 24, 1988 until April 15, 1990. On that date, Andrade decided to leave his job because of the discriminatory treatment he received at work. Based on these allegations, Andrade brought suit against Crawford for violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* This complaint was filed on September 25, 1991.

On November 21, 1991, the Civil Rights Act of 1991 was signed and became law. On November 27, 1991, Andrade moved to amend his complaint to demand punitive damages as provided by § 102 of the Act. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (1991) (making punitive damages available for the first time in Title VII claims). On December 4, 1991, this motion was withdrawn.

On December 13, 1991, Andrade filed a second motion to amend his complaint to assert a claim under 42 U.S.C. § 1981 as provided by § 101 of the Act. *Id.* That section was designed to legislatively reverse the Supreme Court's holding in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and permit employees to bring claims under 42 U.S.C. § 1981 for discriminatory working conditions and for discriminatory

discharge. By bringing a claim under 42 U.S.C. § 1981, Andrade also seeks to amend his complaint to demand punitive damages and a jury trial. Crawford opposes Andrade's motion to amend the complaint on the ground that § 101 of the 1991 Civil Rights Act is not applicable to conduct that occurred prior to its enactment.

## II.

■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint should be "freely given when justice so requires." However, if the amendment seeks to assert a claim that "could not withstand a motion to dismiss," then the Court should deny the motion on the grounds of "futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1124 (6th Cir.1989).

As both parties have recognized, Andrade may only assert a claim under 42 U.S.C. § 1981 if the 1991 amendment of that statute can be applied retroactively to conduct that occurred prior to November 21, 1991. The applicability of the 1991 Civil

Rights Act to pending cases is a hotly disputed matter. Thirty-four district courts have considered the issue so far. Nineteen courts have held that the Act applies prospectively only.[1] Fifteen courts have held that it does apply retroactively to pending cases, in part or in whole.[2] The Supreme Court has also entered the fray. In *Gersman v. Group Health Assn., Inc.*, —— U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992), the Supreme Court vacated a judgment where the lower courts, following *Patterson*, dismissed a § 1981 claim, and remanded the case to the Court of Appeals for the District of Columbia Circuit "for further consideration in light of the Civil Rights Act of 1991." In the wake of this division, this Court must independently decide whether the Act is applicable to this particular case.

## III.

■ To determine whether an act applies retroactively, this Court must first look to congressional intent. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108

1. *See Cook v. Foster Forbes Glass*, 783 F.Supp. 1217 (E.D.Mo.1992); *Thompson v. Johnson & Johnson Mgt. Information Center*, 783 F.Supp. 893 (D.N.J.1992); *Patterson v. McLean Credit Union*, 784 F.Supp. 268 (M.D.N.C.1992); *Tyree v. Riley*, 783 F.Supp. 877 (D.N.J.,1992); *Maddox v. Norwood Clinic, Inc.*, 783 F.Supp. 582 (N.D.Ala. 1992); *West v. Pelican Management Services*, 782 F.Supp. 1132 (M.D.La.1992); *Jane Doe v. Palm Beach County Bd. of Cty. Commissioners*, 783 F.Supp. 1379 (S.D.Fla.1992); *Burchfield v. Derwinski*, 782 F.Supp. 532 (D.Colo.1992); *Johnson v. Rice*, No. 2:85–CV–1318, 1992 WL 16284 (S.D.Ohio, Jan. 24, 1992) (magistrate judge); *Williams v. Health Care Service Group, Inc.*, No. 87P–8659–CIV–ZLOCH (S.D.Fla., Jan. 22, 1992); *Khandelwal v. Compuadd Corporation*, 780 F.Supp. 1077 (E.D.Va.1992); *Goldsmith v. City of Atmore*, 782 F.Supp. 106 (S.D.Ala.1992); *High v. Broadway Industries, Inc.*, No. 90–1066–CV–W–3, 1992 WL 33860, 1992 U.S.Dist. LEXIS 446 (W.D.Mo., Jan. 7, 1992); *Mitchell v. Secretary of Commerce*, No. 82–3020, 1992 WL 10509 (D.D.C., Jan. 10, 1992); *Sorlucco v. New York City Police Dept.*, 780 F.Supp. 202 (S.D.N.Y. 1992); *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991); *Hansel v. Public Service Co.*, 778 F.Supp. 1126 (D.Colo.1991); *Alexander v. AMP, Inc.*, 57 FEP Cases (BNA) 768, 1991 WL 322947

(W.D.Pa., Dec. 5, 1991); *James v. American International Recovery, Inc.*, 1:89–CV–321RHH, 1991 WL 281734 (N.D.Ga., Dec. 3, 1991).

2. *See Poston v. Reliable Drug Stores, Inc.*, 783 F.Supp. 1166 (S.D.Ind.1992); *Sanders v. Culinary Workers Union Local No. 226*, 783 F.Supp. 531 (D.Nev.1992); *Watkins v. Bessemer State Technical College*, 782 F.Supp. 581 (N.D.Ala. 1992); *Joyner v. Monier Roof Tile, Inc.*, 784 F.Supp. 872 (S.D.Fla.1992); *Graham v. Bodine Electric Company*, 782 F.Supp. 74 (N.D.Ill.1992); *Bristow v. Drake Street, Inc.*, No. 87–C–4412, 1992 WL 14262 (N.D.Ill.1992); *Guess v. City of Portage*, No. H–90–276, 1992 WL 8722 (N.D.Ind., Jan. 14, 1992); *Saltarikos v. Charter Mfg. Co.*, 782 F.Supp. 420 (E.D.Wis.1992); *Stender v. Lucky Stores*, 780 F.Supp. 1302 (N.D.Cal.1992); *King v. Shelby Medical Center*, 779 F.Supp. 157 (N.D.Ala.1991); *Thakkar v. Provident Nat'l Bank*, No. 90–3907, 1991 WL 274827 (E.D.Pa., Dec. 17, 1991); *Davis v. Tri–State Mack Distributions, Inc.*, 1991 Daily Lab.Rep. (BNA) 250, 1991 WL 316891 (E.D.Ark., Dec. 16, 1991); *La Cour v. Harris County*, 57 FEP Cases (BNA) 622, 1991 WL 321020 (S.D.Tex., Dec. 6, 1991); *Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991). *See also Great American Tool & Mfg. Co. v. Coors*, 780 F.Supp. 1354 (D.Colo.1992) (retroactively applies to cases filed after November 21, 1991).

L.Ed.2d 842 (1990) ("the starting point . . . is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must be ordinarily regarded as conclusive.") Section 402(a) of the Act contains a general provision on the applicability of the Act. "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." 105 Stat. at 1099. On its face, this language has two possible meanings. It can mean that the Act applies to all cases pending at the time of enactment, or it can mean that the Act only applies to conduct that occurs after that date. The plain language of § 402(a), standing alone, is simply unclear.

When § 402(a) is read in the context of other sections of the Act, however, it may be inferred that the Act is generally applicable to pending cases. Section 402(b) provides that the Act shall not apply to "any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983." 105 Stat. at 1099. This provision was intended to ensure that the Act would not apply to the pending *Wards Cove* case. *See* 137 Cong.Rec. § 15,953 (daily ed. Nov. 5, 1991). If section 402(a) provided for prospective application only, then section 402(b) would be redundant and superfluous. The Supreme Court has consistently held that the court should not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) (listing five cases to that effect). Moreover, the Court has held that "no provision should be construed to be entirely redundant." *Kungys v. U.S.*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988). Section 402(b) retains meaning, then, if it is read as an exception to the general rule that the Act applies retroactively to pending cases.

Section 109 also carves an apparent exception to this general rule. That section expands Title VII coverage to Americans working abroad. It also makes it clear that the section has only prospective effect. Section 109(c) provides, "[T]his section shall not apply with respect to conduct occurring before the date of enactment." 105 Stat. at 1078. If Congress intended to make the entire Act only applicable to conduct occurring after the date of enactment, then section 109(c) would be superfluous and redundant. By necessary implication, then, Congress must have intended for the Act to be applicable to pending cases, "except where otherwise specifically provided." *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

While this reading of the statute is certainly logical,[3] a review of the legislative history reveals, however, that Congress actually intended to remain silent on the issue of retroactivity, unless otherwise specified. The original version of the bill, H.R. 1, mandated broad retroactive application. Those provisions were later deleted in order to secure passage of the final bill. An amendment to exempt all existing claims from coverage was also expressly rejected by the House. *See* 137 Cong.Rec. H3834–02 § 14 (daily ed. June 4, 1991).

In the absence of agreement, the legislation remained silent through ambiguity. The principal sponsors of the legislation, Senators Kennedy and Danforth, issued a joint interpretive memorandum in which they agreed on every issue except for retroactivity. 137 Cong.Rec. § 15,483 (daily ed. Oct. 30, 1991). *See North Haven Board of Education v. Bell*, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982) (the legislative sponsor is "an authoritative guide to the statute's construction.") While Senator Kennedy argued

---

**3.** At the very least, it cannot be logically inferred that section 402 mandates *prospective* application.

that the law should be applied retroactively to pending cases and Senator Danforth argued that the law should only apply prospectively, these arguments were based on case law, not legislative intent. *See* 137 Cong.Rec. § 15,483 (daily ed. Oct. 30, 1991) (Senator Kennedy—"Ordinarily, courts in such cases apply the newly enacted procedures and remedies to pending cases."); (Senator Danforth—"My review of the Supreme Court caselaw supports my reading that ... no new legislation should be applied retroactively."). As Senator Kennedy stated:

It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment.

137 Cong.Rec. § 15,485 (daily ed. Oct. 30, 1991). Accordingly, this Court will independently examine the case law to determine whether the Act is applicable to this case.

### IV.

In *Kaiser Aluminum*, 110 S.Ct. at 1576–1577, the Supreme Court recognized that there are two valid, but inconsistent rules or presumptions that the Court has previously construed to determine whether a new law applies to pending cases. In *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Supreme Court held that the courts should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." In *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), however, the Court held that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."

After recognizing the "apparent tension" between these two rules, the Court in *Kaiser Aluminum* failed to provide any reconciliation because Congress' intent, in that case, was clear. 110 S.Ct. at 1577. Accordingly, since neither *Bowen* nor *Brad-*

*ley* have been overruled, this Court must reach its own reconciliation that is both appropriate for this case and consistent with the principles enunciated in those precedents.

In *Bradley*, 416 U.S. 696, 94 S.Ct. 2006 (1974), the Court considered the applicability of a newly enacted attorneys' fees statute to a pending case. The district court had awarded attorneys fees to the plaintiffs based on its own equitable powers. Immediately after this decision, Congress enacted a new statute that authorized attorneys' fees for successful litigants in school desegregation cases. The statute stated that attorney fees will be available "after the date of enactment." *Id.* at 716, n. 23, 94 S.Ct. at 2018, n. 23. Despite this new legislation, the court of appeals reversed the district court's decision to award attorneys' fees, holding that the new statute was inapplicable to a pending case. On review, the Supreme Court reversed that decision and held that the appellate court should have applied "the law in effect at the time it renders its decision." 416 U.S. at 714, 94 S.Ct. at 2017.

In reaching this decision, the Court first emphasized the importance of applying the law as it existed at the time of decision. As Chief Justice Marshall held in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 102, 2 L.Ed. 49 (1801):

[When] a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional ... I know of no court which can contest its obligation.... It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws.

Indeed, whenever a court makes a decision, it has an obligation to follow the law, as established by Congress and interpreted by the higher courts. When Congress affirmatively changes the meaning of the law, the

courts must obey that instruction or ignore its obligation to follow the law.

However, as Chief Justice Marshall and the Court in *Bradley* both recognized, the courts must weigh this obligation against the injustice that may result from retrospectively altering the rights of private parties. In *Bradley*, the Supreme Court recognized that it will refuse to apply an intervening law that will "infringe upon or deprive a person of a right that had matured and become unconditional." *Id.* at 720, 94 S.Ct. at 2020. Moreover, the Court observed that it would be manifestly unjust to impose "new and unanticipated obligations ... without notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. In *Bradley,* the Court only decided to apply the new attorneys' fee statute to a pending case because it "serve[d] to create an additional basis or source for the [defendant's] potential obligation to pay attorneys' fees." *Id.* at 721, 94 S.Ct. at 2021. Since the defendant acted "with the knowledge that, under different theories, ... [it] could have been required to pay attorneys' fees," the actual imposition of that obligation was not unanticipated or unforeseeable. *Id.*

In *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Court applied these principles to prevent the Department of Education from applying a 1978 amendment to Title I of the Elementary and Secondary Education Act retroactively to recover funds that were misused from 1970–1972. Under the substantive standards that existed at the time, there was a question about whether the state of New Jersey had properly expended its Title I funds. Under the 1978 amendment, however, it was clear that the expenditures violated the substantive requirements of Title I. In reaching its decision, the Court noted that the "manifest injustice" exception in *Bradley* "comports with another venerable rule of statute interpretation, *i.e.* that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Id.* 470 U.S. at 639, 105 S.Ct. at 1560. In this case, the Court held, since New Jersey had no reason to expect that the standards governing proper expenditures would change, it had a right to rely on existing law in determining how to spend its grants.

[When New Jersey] applied for and received Title I funds for the years 1970–1972, [it] had no basis to believe that the propriety of their expenditures would be judged by any standards other than the ones in effect at the time. Retroactive application of the changes in the substantive requirements of a federal grant program would deny both federal auditors and grant recipients fixed, predictable standards for determining if expenditures were proper.

*Id.* Accordingly, it was manifestly unfair to apply the 1978 amendments retroactively to recover this government aid.

This concern about the use of new law to retroactively deprive a recipient of government aid also provided the basis for the Court's decision in *Bowen.* In that case, the Secretary of Health and Human Services was seeking to retroactively apply new cost-limit rules that would lower the levels of Medicare costs that the government would reimburse. Under these new regulations, seven (7) hospitals were required to return over $2 million dollars in medicare reimbursement payments. In holding that "retroactivity was not favored in the law," the Court never expressly overruled *Bradley. Bowen,* 109 S.Ct. at 471. Instead, it remained focused on the unfairness of retroactively altering established rights and expectations. "The power to require adjustments for the past is drastic, the Court held, "[i]t ... ought not to be extended so as to permit unreasonably harsh action without very plain rules." *Id.* (quoting *Brimstone R. Co. v. United States,* 276 U.S. 104, 122, 48 S.Ct. 282, 287, 72 L.Ed. 487 (1928)). The hospitals had previously relied on the legal expectation that they would be reimbursed by the government for major expenditures of money. Like *Bennett,* then, it was manifestly unfair for the government to retroactively revoke benefits that the recipients previously received and used without any expectation that it would later be taken away.

In all of these cases, the Supreme Court was guided by the same fundamental principles.. While the Court recognized that it was obligated to obey the law as created by Congress, it also wanted to avoid retroactive alteration of existing legal expectations that citizens rely on to conduct their affairs. When the new statute imposed unanticipated and unforeseeable costs, like the return of government aid or the imposition of new liability, the Court refused to apply the new law to conduct that occurred prior to enactment. Otherwise, the Court applied the law as it existed at the time of decision.

This is the rule applied by the Sixth Circuit. *See U.S. v. Murphy,* 937 F.2d 1032, 1038 (6th Cir.1991); *Boddie v. American Broadcasting Companies, Inc.,* 881 F.2d 267, 270 (6th Cir.1989) (courts may not apply new statutes to pending cases if they "affect substantive rights and liabilities.") (quoting *Bennett* ). In *Murphy,* the Court considered the retroactivity of two amendments to the False Claims Act. The first amendment lowered the standard by which the government could establish liability under the act. The second amendment increased the penalties for violations. The Circuit held that the amendments "create new liability in connection with a past transaction." *Id.* at 1039. Accordingly, the Circuit held, the amendments "affect substantive rights and liabilities" and should not be applied retroactively. *Id.*

### V.

In deciding whether 42 U.S.C. § 1981 provides a cause of action to Andrade, this Court must interpret that statute and determine its meaning. 42 U.S.C. § 1981, in part, provides all citizens with the same right "to make and enforce contracts ... as is enjoyed by white citizens." In *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court interpreted the statute as prohibiting all racial discrimination in private employment. In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), however, the Court limited its application by interpreting the term, "make and enforce

contracts," as relating only to discrimination in the formation of the employment relationship. Now, Congress has affirmatively stated that that interpretation was wrong. Instead, the Congress has stated that the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991, Pub.L. No. 102–166, § 101(b), 105 Stat. 1071, 1072 (1991).

In cases where Congress corrects the Supreme Court's interpretations of an existing statute, rather than creating new rights, the statute is frequently interpreted retroactively. *See Ayers v. Allain,* 893 F.2d 732, 754–55 (5th Cir.1990), *vacated on other grounds,* 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted on other grounds,* —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991) (applying the Civil Rights Restoration Act of 1987 retroactively); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2nd Cir.1987) (retroactively applying the Handicapped Children's Protection Act of 1986 because it "simply codifies a congressional purpose long in place which Congress believed the Supreme Court misinterpreted."). Accordingly, this Court must follow the current and correct interpretation of § 1981 and provide Andrade with a cause of action under its provisions. Otherwise, Crawford will receive a windfall from an incorrect interpretation of the law.

As stated earlier, this Court will not apply a new law to a pending case if it retroactively alters "substantive rights and liabilities." A return to the law as it existed prior to *Patterson,* however, will not necessarily alter the parties' legal expectations. Since Andrade was employed in 1988, before *Patterson,* Crawford cannot now claim that it relied on a judicial decision that did not exist. Even after the *Patterson* decision, Crawford knew that its conduct violated Title VII and that legal relief, compensatory and punitive damages, could be obtained under state law. *See* O.R.C. § 4112.99 (authorizing a civil action for "damages, injunctive relief, or any oth-

er appropriate relief."); *see also Helmick v. Cincinnati Word Processing,* 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989) (noting that prior to September 28, 1987, the relief provided for by O.R.C. Ch. 4112 was limited to that available in equity, such as injunctive relief, reinstatement, and back pay, but now includes legal relief). Like the attorneys' fees statute in *Bradley,* then, the Civil Rights Act of 1991 simply provides an alternative source for liability and does not create "new liability in connection with a past transaction." *Murphy,* 937 F.2d at 1039.

### VI.

For these reasons, the Court reaffirms its decision to grant Andrade leave to amend his complaint and assert a claim under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. Accordingly, Crawford's motion to reconsider is denied.

IT IS SO ORDERED.