**Ricardo J. ANDRADE, Plaintiff,**

v.

**CRAWFORD & COMPANY, Defendant.**

**No. 1:91CV1902.**

United States District Court,
N.D. Ohio, E.D.

May 5, 1992.

Harold Williams, Stephanie M. Jackson, Legal Aid Soc. Of Cleveland, Cleveland, Ohio, for Ricardo J. Andrade.

Carolyn K. Seymour, Marc J. Bloch, Duvin, Cahn & Barnard, Cleveland, Ohio, for Crawford & Co.

MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

■ Ricardo Andrade brings this action against his former employer, Crawford & Company, alleging that he was constructively discharged due to discriminatory working conditions. On March 10, 1992, this Court issued a written opinion that reaffirmed its prior decision to grant Andrade leave to amend his complaint and assert a claim under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. *See Andrade v. Crawford & Co.*, 786 F.Supp. 1302 (N.D.Ohio 1992). Crawford now moves to reconsider that decision for a second time based on two recent opinions in the Sixth and Eighth Circuits. For the reasons stated, Crawford's second motion for reconsideration is denied.

I.

Ricardo Andrade was employed by Crawford & Company from October 24, 1988 until April 15, 1990. On that date, Andrade decided to leave his job because of the discriminatory treatment he received at work. Based on these allegations, Andrade brought suit against Crawford for violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* on September 25, 1991. He was unable to state a claim under 42 U.S.C. § 1981 at that time, however, because the Supreme Court had previously limited the scope of § 1981 to prohibit discrimination only in the formulation of an employment contract. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

On November 21, 1991, the Civil Rights Act of 1991 was signed and became law. Section 101 of the Act amends 42 U.S.C. § 1981 to prohibit racial discrimination in all aspects of the employment relationship. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1072 (1991). Based on this provision, Andrade moved to amend his complaint and add a claim under 42 U.S.C. § 1981. This motion was originally granted through a marginal entry, but upon reconsideration, this Court issued a full written opinion and held that section

101 of the 1991 Civil Rights Act could be applied to this case because it did not affect the "substantive rights and liabilities" of these particular parties. *See Andrade v. Crawford & Co.,* 786 F.Supp. 1302 (N.D.Ohio 1992).

Three days later, the United States Court of Appeals for the Sixth Circuit issued its decision in *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992). In that case, Richard Vogel, a white male, brought suit to challenge an affirmative action hiring policy adopted by the City of Cincinnati pursuant to a 1981 consent decree with the Department of Justice. The consent decree established a long term goal of improving the numbers of blacks and females in the Cincinnati police force through a system of hiring preferences. After Vogel was originally excluded from the 1989 class of new recruits, he filed suit, contending that the City's racial preference system violated the equal protection clause of the fourteenth amendment because it unfairly discriminated against him on the basis of his race.

The district court originally dismissed the case for lack of standing. However, on appeal, the Sixth Circuit reversed this decision and held that Vogel had standing to challenge the constitutionality of the consent decree. This holding was based on the Supreme Court's decision in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (a non-party has standing to challenge the constitutionality of a consent decree in a collateral proceeding, even though the person had knowledge of the proposed decree and an opportunity to object.) In order to follow *Martin,* the Sixth Circuit had to determine whether section 108 of the 1991 Civil Rights Act, which effectively reversed the holding in *Martin,* applied to that case.[1] After examining the lack of a clear legislative intent on the question of retroactivity, the Circuit held that the 1991 Act did not apply to that case because "[c]learly, retroactive application of the 1991 Act would affect 'substantive

rights and liabilities' of the parties to this action."

This Court applied the same substantive standards in this case. Following the "manifest injustice" exception enunciated in *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), as limited by *United States v. Murphy,* 937 F.2d 1032 (6th Cir. 1991), this Court decided to apply the Act to this case only because it did not "create new liability in connection with a past transaction." *Murphy,* 937 F.2d at 1039. First, section 101 does not create new liability for the parties in this case because it merely restored rights already in existence, but temporarily eliminated, through an incorrect judicial interpretation of a congressional statute. More importantly, section 101 of the Act does not create new liability for the parties in this case because it merely provides an alternative source of liability already in existence under Title VII and state law.

Indeed, the uniqueness of § 1981 claims was specifically recognized by the Eighth Circuit in *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992). In that case, the Court expressly addressed the question of "whether § 101 of the Civil Rights Act of 1991 applies to cases pending when it was enacted." Like Andrade, Fray was employed before *Patterson,* "at a time when prior cases warned that such conduct would be actionable under § 1981." Moreover, like Andrade, the conduct at issue in *Fray* "was clearly actionable under Title VII." "Under these circumstances," the Eighth Circuit concluded, "retroactive application of § 101 to this pending case would neither alter the rights and expectations of the parties nor disturb previously vested rights." *Id.*

The Eighth Circuit decided not to apply the Act retroactively, however, because it found "clear congressional intent" that the statute was prospective only. Since "the President had previously vetoed a bill containing an explicit retroactive provision,"

---

**1.** Section 108 prohibits collateral challenges to employment practices that implement consent decrees by any person who had actual notice of the proposed order and a reasonable opportuni-

ty to object, or whose interests were adequately represented in another challenge based on the same legal grounds and a similar factual situation. 105 Stat. at 1076.

the Eighth Circuit held, "the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process." *Id.*

While the Eighth Circuit correctly observed that the President had rejected an express retroactive provision, it failed to observe that the Congress had also rejected an express prospective provision as well. *See* 137 Cong.Rec. H3834–02 § 14 (daily ed. June 4, 1991) (an amendment to exempt all existing claims from coverage was also expressly rejected by the House.) In the absence of agreement on this issue, the Congress decided to remain silent and leave the question of retroactivity to the courts. As Senator Kennedy stated:

> It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment.

137 Cong.Rec. § 15,485 (daily ed. Oct. 30, 1991).

 Indeed, most of the courts, agencies, and legislators who have issued opinions on the Act's retroactivity have relied on case law, not legislative intent, to reach their opinions. Even the Equal Employment Opportunity Commission, who decided not to seek damages for conduct that occurred prior to the Act, reached its decision through an examination of judicial precedent, rather than through a policy determination about how best to enforce the congressional mandate.[2] *Compare Chevron, U.S.A. v. Natural Resources Defense,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (EPA made a reasonable *policy* choice to apply the "bubble concept" to the regulation of stationary sources under the Clean Air Act.) When a question involves a matter of policy regarding the promulgation of substantive regulations in the absence of congressional intent, then the courts should defer to the agency's expertise in this area. *Id.* at 844–845, 104 S.Ct.

at 2782–2783. But, when the question merely involves an interpretation of judicial precedent, then the courts should independently decide the question since they are more uniquely suited to make these legal determinations.

## II.

For these reasons, the Court reaffirms its prior decision to grant Andrade leave to amend his complaint to assert a claim under 42 U.S.C. § 1981, as amended by the 1991 Civil Rights Act. The defendant's second motion for reconsideration is therefore denied.

IT IS SO ORDERED.

---

**2.** The EEOC reached its decision not to seek damages in charges that challenge pre-Act conduct because it decided to completely ignore the Supreme Court's decision in *Bradley* and "follow the dictates" of *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) which "represents the Supreme Court's most recent holding on this issue." EEOC Policy Guidance Statement, No. 915.002, p. 7 (Dec. 27, 1991) (discussed in 60 U.S.L.W. 2418 (Jan. 7, 1992).